(No. 14168.—Judgment affirmed.)

THE CARTERVILLE AND BIG MUDDY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(A. J. BROOKHOUSE, Defendant in Error.)

*Opinion filed June 21, 1922.*

1. WORKMEN'S COMPENSATION—*when question of constitutionality of Compensation act is waived.* Any question as to the constitutionality of the Compensation act is waived by participating in the hearings before the arbitrator and the commission without objection and by entering into a stipulation that the party is operating under the act, and such party cannot afterward raise the question in the circuit court.

2. SAME—*when evidence is sufficient to sustain award for injury to a miner from bad air.* An award for an injury to a coal miner because of bad air in the mine is sustained by evidence that he became afflicted with the condition complained of while he was working in the mine and that the doctor who examined him found he was suffering with the symptoms which attend the condition resulting from bad air in a mine, notwithstanding there is also testimony that he had been treated by the doctor for intestinal trouble during the year prior to the alleged injury.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

CHARLES C. MURRAH, for plaintiff in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Williamson county quashed a writ of *certiorari* issued on the application of the Carterville and Big Muddy Coal Company to review a decision of the Industrial Commission which sustained an award by an arbitrator of compensation to A. J. Brookhouse under the Workmen's Compensation act, and the record of the circuit court has been filed as a return to a writ of error allowed on the petition of the Carterville and Big Muddy Coal Company.

One of the errors assigned is based on the unconstitutionality of the Workmen's Compensation act. That ques-

tion was waived by the plaintiff in error by participating in the hearings before the arbitrator and the commission without objection and by entering into a stipulation that it was operating under the act, and it could not afterward raise the question for the first time in the circuit court. *Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 381.

The only other question urged is the absence of any competent evidence to justify the award. The claimant is a coal miner, and testified that he went down into the mine on the morning of July 5, 1919, about 6:30 and went direct to his room. He came out about noon because he seemed to be "through." He could hardly get his breath and could not work any more because of the air. He had had considerable experience in coal mines, having worked fifteen years as a coal miner, and he understood a good deal about the air in mines. He got short of breath and weak and jerked all over before he came out of the mine. He did not go to a doctor immediately after going home but was unconscious for two days and two nights and had a headache. His son took him in a car to Dr. Miles Baker, who told him what he was suffering with, and he has not worked since. His head pains him from the effects of the bad air in the mine. About two weeks after the event he went to the superintendent and asked him for compensation, saying that he was down and not able to work on account of the air. When he first went to his room on the day he was overcome he found there was not much air, and the condition got worse, coming on slowly during the four hours he was at work. On cross-examination he testified that he was not exactly unconscious when he came out of the mine but knew enough to stagger out, and came out with the help of a stick and sat down in the shade. He went home and stayed there two weeks. He was conscious on the 5th and until the middle of the evening on the 6th, and then he didn't know anything on the 7th. He said he could not tell just what the air had in it that made it bad. It was

some kind of gas. It was poisoned air that gathered over the water, and the reason he knows it was bad was because it made him sick, short of breath and weak, and caused him to tremble all over so he could not work; that the trouble was not the same he had had for several years.

Dr. Baker testified that the claimant came to him for treatment in July, 1919. He sent him some medicine, and a day or two later the claimant's son brought him in an automobile to the doctor's office and an examination was made. The claimant had a slight fever and difficulty of breathing, shortness of breath, and said he had had a high fever and was out of his head. The doctor attributed the difficult breathing, which he said was something like an asthmatic condition, to the bad air. He had treated a number of bad-air results,—poisonous conditions,—and Brookhouse had the symptoms of such condition and that was what the doctor treated him for. The doctor testified that at the time of the hearing, in October, 1921, Brookhouse was much better, his difficult breathing was gradually leaving him, he could do some work without injury and he would gradually recover. On cross-examination he testified that he had treated Brookhouse for about a year for intestinal indigestion. He would have diarrhœa at times, attacks of which would give him some trouble. The doctor treated him for this disease at times, only, and did not treat him in July for the same thing he had been treating him for prior to that time, though sometimes during this treatment Brookhouse had a recurrence of his diarrhœa. The doctor based the conclusion that his trouble was due to bad air on his difficult breathing when he first came to visit the doctor, and advised him to go to Creal Springs on account of his difficult breathing. The doctor testified that he did not think it would be possible for a man to have a case of chronic stomach trouble caused from carbon dioxide poisoning; that he had never had any experience with it; that the poison usually affects the lungs and nerve centers.

He testified that Brookhouse came to his office and got medicine for the past year or so; that there was a difference in his trouble in July; that his trouble then was difficult breathing,—rather an asthmatic condition; that the man was air hungry,—couldn't get enough air down in his lungs; that mine gas poisoning sometimes lasts for two or three months; that a man cannot make any exertion without bringing on the difficult breathing. The doctor had seen it remain four months after the patient was removed from the carbon dioxide air.

From this statement it is manifest that the contention of the plaintiff in error that there is no competent evidence in the record upon which to base the award cannot be sustained. According to this testimony the claimant went into the mine and worked four hours. The air was bad when he went in and became gradually worse the longer he remained. He got short of breath and weak and could not work any more. He came out of the mine, and when he visited the doctor was found to be suffering with the symptoms which attend the condition resulting from bad air in a mine. In the three months prior to the hearing before the arbitrator his condition gradually improved, and the doctor stated that at that time he could do some work without injury and would gradually recover. Uncontradicted this evidence was sufficient to sustain the award, and it is not substantially contradicted.

The claim is made that Brookhouse's disability arises from the physical condition for which he had been treated during the year before July, 1919, but the evidence does not warrant such conclusion. This occurrence arose and the hearings were had before the amendment of the law in 1921 which authorizes the court to review the questions · of fact, and we are therefore precluded from weighing the evidence and determining the preponderance.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*